# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BRUCE COUTURIER and ELEANOR COUTURIER,

Plaintiffs

v.

AMERICAN INVSCO, *et al.*,

Defendants

Case No.: 2:12-cv-01104-APG-NJK

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT ON BENCH TRIAL**

I consolidated five related cases for trial and conducted a bench trial.[1] Each of these actions asserts the same basic claim: that defendant Meridian Private Residences CH, LLC ("MPR") breached a February 2008 "Condominium Resort Hotel Lease" that MPR entered into with each plaintiff. The leases pertain to the plaintiffs' condominium units at The Meridian Private Residences (the "Meridian Condo Project") at 250 East Flamingo Road, Las Vegas, Nevada. As required by Federal Rule of Civil Procedure 52(a)(1), I hereby enter my findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiffs Bruce and Eleanor Couturier are residents of the State of California and were owners of two condominium units located within the Meridian Condo Project, specifically Units 6-323 and 7-213.

---

[1] The cases consolidated for trial are: 2:12-cv-01104 ("Couturier"), 2:12-cv-01106 ("Edalatdju"), 2:12-cv-01107 ("Heldt"), 2:12-cv-01108 ("Kosa and Matti"), and 2:12-cv-01111 ("Kosa").

2. Defendant MPR is a Michigan limited liability company, registered to do business in Nevada.

3. On approximately February 1, 2008, the Couturiers entered into two Condominium Resort Leases with MPR for their units, effective from February 1, 2008 to March 31, 2010. Exh. 4.[2]

4. MPR drafted all of the leases that are at issue in these cases. MPR is referred to as the "Lessee" in the leases. The condominium owners are listed as "Owner" in the leases.

5. The leases say that "Owner hereby grants to [MPR] the right to occupy and use the Unit in conjunction with [MPR's] operation of a condominium resort . . . ." *See, e.g.*, Exh. 4 at 1, ¶ 2(a).

6. Section 4(a)(1) of the leases provides that "It is expressly agreed and understood that Lessee is leasing the Property with the intent to sublease the Property."

7. Section 3(a) of the leases provides that MPR "shall pay Monthly Rent . . . commencing with February 2008 . . . ." Section 3(b) of the leases provides that MPR shall reimburse to the Couturiers "quarterly in respect to real estate taxes and shall pay homeowner's association assessments directly to the homeowner's association as due."

8. The monthly rent for Couturier Unit 6-323 under the lease was $2,527.00. The monthly homeowner association (HOA) assessment was $398.00 per month, and real property taxes were $308.00 per month.

---

[2] Exhibit 4 is the lease for unit 7-213. Bruce Couturier testified that he entered into a separate lease for unit 6-323 but he cannot find it. No evidence was offered to contradict this testimony, and MPR's proposed Exhibit A is a copy of the lease for unit 6-323. All of the plaintiffs' leases are identical, save for the owners' names, unit numbers, and monetary figures.

2

9. The monthly rent for Couturier Unit 7-213 under the lease was $2,515.00. The monthly HOA assessment was $390.00 per month, and real property taxes were $288.00 per month.

10. Section 6(d) of the leases provides that "In the event the Property is uninhabitable for any reason whatsoever (other than through the fault of Lessee), Lessee shall immediately notify Owner . . . . In addition, if the Property is not rentable or is uninhabitable for a period exceeding 60 consecutive days, the Lessee may terminate this Agreement immediately and without prior notice of any kind."

11. Section 18 of the leases states that "If either party shall institute any suit . . . against the other in any way connected with this contract, the successful party shall recover from the other a reasonable sum for its attorneys' fees in connection with such suit . . . ."

12. MPR made three rental payments to the Couturiers but then ceased all further payments.

13. On June 20, 2008, the Clark County District Attorney's Office wrote a letter addressed to the Meridian Private Residences Homeowners Association, Attn: Mr. Michael Mackenzie. Exh. N. Mackenzie was an officer and employee of defendant American Invsco, MPR's predecessor-in-interest. ECF Nos. 278-7 at 2, 278-8 at 6:19-21. The letter states, among other things, that the condos cannot be rented for a period of less than 30 days because of various provisions of the Clark County Code. In addition, "the Meridian has not satisfied all conditions attached to the recent approval for resort condominiums . . . that are a pre-requisite to commencing a resort condominium use." *Id*. The letter also states that "you and any organization in which you are involved must immediately cease and desist from violating the provisions of the Clark County Code . . . ." *Id*.

14. MPR contends that this letter triggered the termination provision in section 6(d) of the leases.

15. MPR did not cooperate in returning possession of the condos to the Couturiers and the other plaintiffs. Rather, the plaintiffs had to take active steps to recover possession of their units, including initiating eviction proceedings in some cases. At least one plaintiff, Mary Heldt, testified at trial that MPR contested the eviction proceedings she initiated.

16. All of the plaintiffs either made reasonable efforts to mitigate their damages or were prohibited from doing so by MPR's actions. None of the plaintiffs was able to fully mitigate their damages.

17. Any item specified above which is wrongly stated as a finding of fact that should have been set forth as a conclusion of law is so designated.

## **CONCLUSIONS OF LAW**

1. The court has personal and subject matter jurisdiction over this case.

2. MPR argues that some of the plaintiffs lack standing to maintain their claims because they entered into mortgage documents with their lenders under which they assigned their right to recover rents to the lenders. *See, e.g.*, Exhs. P-6, Q-2, and R-5. However, MPR ignores the language in the Assignment of Rents stating that: "Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent." *See* Exhs. P-6, Q-2, and R-5. No evidence was presented that any lender gave notice to any of the plaintiffs or tenants that the Rents were to be paid to the lender or its agent. Each of the plaintiffs owned their respective condo at the relevant time and has standing to maintain their claims.

3. MPR also claims that some of the plaintiffs lack standing because they did not hold title to their condos at the relevant times. MPR has not proven that any of the plaintiffs in these cases lacks standing to assert their respective claims. For instance, the Couturiers held title to units 6-323 and 7-213 until December 12, 2008, at which time they transferred the units to their trust, B & E Management Trust, of which they were trustees. MPR presented no evidence showing that the Couturiers did not have authority to act on behalf of the trust.

4. MPR breached the leases by failing to pay rent, taxes, and HOA assessments as required. This breach caused damages to the Couturiers.

5. To the extent there is any ambiguity in the language in the leases, that ambiguity must be construed against MPR, who drafted them. *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007).

6. MPR contends that it was excused from performing under the leases for a variety of reasons. First, MPR contends that the County's "cease and desist" letter (Exh. N) triggered the termination provision in section 6(d) of the leases. However, the letter does not say—as required under section 6(d) of the leases—that the condos are not rentable or uninhabitable for a period exceeding 60 consecutive days. Rather, the letter says that the condos cannot be rented for a period of less than 30 days. Exh. N. No evidence was presented that the condos could not be rented for a period of 30 days or longer.

7. MPR contends that the County's "cease and desist" letter frustrated or rendered impossible its intention to operate the Meridian as a resort condominium project. Each lease granted to MPR "the right to occupy and use the Unit in conjunction with [its] operation of a condominium resort (the "Condo Resort")." *See, e.g.*, Exh. 4 at 1, ¶ 2(a). Clark County Code section 30.08.03 defines a Resort Condominium as follows:

"Resort Condominium" means a commercial hotel condominium development that can be subdivided into individual rooms or suites for separate ownership or time share, and that may include cooking facilities. A resort condominium **may be used for continuous, unlimited residency** by a single individual, group or family and may also be offered to the general public on a day-to-day basis, as required and enforced by the covenants, conditions and restrictions of the commercial condominium development. (emphasis added).

8. This definition of "Resort Condominium" allows long-term (e.g., over 30 days) occupancy of the condos.[3] The County's letter did not prohibit long-term rentals nor did it require the owners to obtain a license or pay taxes on rentals over 30 days. Thus, MPR could have operated its resort condominium project with long-term rentals (i.e., over 30 days).

9. MPR argues that it intended to operate the Meridian condos as short-term rentals. But the leases make no reference to "short-term rentals." Each lease says that MPR was going to use the condos "in conjunction with [its] operation of a condominium resort," and that MPR was leasing the condos "with the intent to sublease" them. *See, e.g.*, Exh. 4 at 1, ¶¶ 2(a) and 4(a)(1). The termination provision in section 6(d) makes no reference to an inability to rent on a short-term basis. To the contrary, that section makes the lease terminable if the condos cannot be rented for more than 60 consecutive days. *Id*. at 3, § 6(d) ("[I]f the Property is not rentable or is uninhabitable for a period exceeding 60 consecutive days, the Lessee may terminate this Agreement . . . ."). If MPR wanted to be able to terminate based on the inability to conduct short-term rentals, it could have written that into the leases. It did not, and it cannot now read such language into the leases.[4]

---

[3] Clark County Code § 30.44.010(b)(7)(C) prohibits "transient commercial use of residential properties." But Code § 30.08.030 defines that term to exclude occupancy for 31 days or longer. Thus, neither the Code nor the County's "cease and desist" letter prohibited long-term rental of the condos for a resort condominium.

[4] Section 11 of the leases, titled "Entire Agreement," provides in relevant part, "This Agreement constitutes the entire agreement between the parties with respect to the subject matter

6

10. MPR's actions belie its argument that the leases were terminable because of the County's letter and lease section 6(d). MPR gave no notice of termination based upon habitability or inability to rent. And if MPR intended to terminate the leases, it would have turned over possession of the condos after receiving the County's "cease and desist" letter. But MPR did not cooperate in returning possession of the units to the plaintiffs. Rather, the plaintiffs had to take active steps to recover possession of their units, and MPR fought the eviction proceedings.

11. Finally, the placement of the "not rentable or is uninhabitable" language within section 6 of the leases further suggests that MPR's interpretation of the termination clause is not correct. Section 6 is titled "Insurance," and sub-section 6(d) is titled "Premises Uninhabitable." Section 6 addresses the need for the condo owner to maintain insurance, the requirement that MPR be named as an additional insured, MPR's right to reimbursement for losses, and what happens should the property become uninhabitable.[5] Thus, the "not rentable or is uninhabitable" language in section 6(d), plainly read in this context, refers to loss of use of the condo due to casualties that should be covered by insurance. It does not support MPR's argument that it was meant to be triggered by an inability to conduct short-term rentals because of a county code violation.

12. MPR next argues that, because the County's "cease and desist" letter was addressed to the HOA, it was the HOA's obligation to obtain the appropriate County permits, thus excusing MPR's performance. No evidence was offered showing or even suggesting any

---

hereof . . . . Owner and Lessee acknowledge that in entering into this Lease neither of them has relied upon [any] statement by the other, other than as contained in this writing. Any amendments or modifications to this Agreement must be in writing and must be signed by the party against whom enforcement is sought." Exh. 4 at 4-5, § 11.

[5] MPR does not argue, and it presented no evidence, that the condos were uninhabitable.

obligation on the HOA, or any individual condo owner, to obtain County approvals. MPR was to be the beneficiary of any payments from sublessees under the leases, and it was to receive the profits from operating the resort condominium project. Therefore, it was MPR's obligation to obtain the necessary approvals from the County. And the letter is addressed to Michael Mackenzie (an officer and employee of defendant American Invsco, MPR's predecessor-in-interest) and states that "you and any organization in which you are involved must immediately cease and desist from violating the provisions of the" County Code. Exh. N. This strongly suggests that the letter was directed at Mackenzie and MPR, not the HOA.

13. MPR next argues the leases were illegal because the plaintiffs did not obtain business licenses to rent out their units to MPR. MPR argues that, because the subject matter of the leases was illegal, as a matter of law the leases are unenforceable. But this situation falls within the exception to this general rule of *in pari delicto*. The Supreme Court of Nevada has repeatedly held that:

> the courts should not be so enamored with the latin phrase 'in pari delicto' that they blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, [1] the public cannot be protected because the transaction has been completed, [2] where no serious moral turpitude is involved, [3] where the defendant is the one guilty of the greatest moral fault, and [4] where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.

*Magill v. Lewis*, 333 P.2d 717, 719 (Nev. 1958). *See also In re Amerco Derivative Litig.*, 252 P.3d 681, 696 (Nev. 2011) (en banc) (confirming continuing validity of the *Magill v. Lewis* factors). Here, the public cannot be protected because the leases have already been completed, there is no serious moral turpitude on behalf of the plaintiffs, and MPR (and its related predecessors-in-interest)—not the plaintiffs—are guilty of the moral fault. To enforce the rule

here would be to permit MPR to be unjustly enriched at the expense of the plaintiffs. Therefore, even if the leases could be considered illegal due to a licensing violation, that does not excuse MPR's breach.

14. MPR has made no showing of an excuse or other defense to its breach of the leases. The Couturiers are entitled to recover damages incurred as a result of MPR's breaches.

15. As a result of MPR's breaches of the leases, the Couturiers are entitled to recover damages for Unit 6-323 in the amount of $67,893.00, which represents 21 months of lease payments along with HOA dues and property taxes.

16. As a result of MPR's breaches of the leases, the Couturiers are entitled to damages for Unit 7-213 in the amount of $67,053.00, which represents 21 months of lease payments along with HOA dues and property taxes.

17. Under section 18 of the leases, the Couturiers are also entitled to recover from MPR a reasonable sum for their attorneys' fees incurred in connection with this lawsuit. They are also entitled to recover costs and interest on their award as allowed by law.

18. Any item specified above which is wrongly stated as a conclusion of law that should have been set forth as a finding of fact is so designated.

## **ORDER**

IT IS THEREFORE ORDERED that plaintiffs Bruce and Eleanor Couturier are awarded damages against defendant Meridian Private Residences CH, LLC in the amount of $134,946.00.

IT IS FURTHER ORDERED that the Couturiers may file a motion to recover their reasonable attorneys' fees within 14 days of entry of this Order. Prior to filing that motion, they shall confer with Meridian Private Residences CH, LLC to determine whether they can agree on

the appropriate amount of those fees.  Any motion for fees shall include a certification that the parties have conferred in good faith to resolve the issue.

    IT IS FURTHER ORDERED that the Couturiers are awarded costs and interest as allowed by applicable law.

    IT IS FURTHER ORDERED that the clerk of court shall enter judgment accordingly.

    DATED this 28th day of June, 2018.

_____<br>
ANDREW P. GORDON<br>
UNITED STATES DISTRICT JUDGE